XUE & ASSOCIATES, P.C.
Benjamin B. Xue, Esq.
Michael S. Romero, Esq.
1 School Street, Suite 303A
Glen Cove, NY 11542
Phone: (516) 595-8887
Fax:    (212) 219-2276
*Attorneys for Plaintiffs, proposed*
*FLSA Collective and potential Rule 23*
*Class*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

GUILLERMO ALEJANDRO JEREZ and       Case No.:  24-cv-5587
GUILLERMO ERNESTO JEREZ
*on their own behalf and on behalf of others*
*similarly situated,*                    **COMPLAINT**

            Plaintiffs,

    -against-

FUSCHETTO HOME IMPROVEMENTS, LLC and
GERARDO MARTIN FUSCHETTO,

            Defendants.

---------------------------------------------------------------X

       Plaintiffs Guillermo Alejandro Jerez ("Alejandro"), and Guillermo Ernesto Jerez

("Ernesto") (collectively "Plaintiffs"), on behalf of themselves and others similarly situated, by

and through their attorneys, Xue & Associates, P.C., hereby bring this complaint against

Fuschetto Home Improvements, LLC ("Fuschetto LLC"), and Gerardo Martin Fuschetto

("Martin") (collectively "Defendants"), and allege as follows:

1

## INTRODUCTION

1.  This action is brought by Plaintiffs on behalf of themselves as well as other employees similarly situated, against Defendants for alleged violations of the Fair Labor Standards Act, (FLSA) 29 U.S.C. §201 *et, seq.* and New York Labor Law (NYLL), arising from Defendants' various willfully and unlawful employment policies, patterns and practices.

2.  Upon information and belief, Defendants have willfully and intentionally committed widespread violations of the FLSA and NYLL by engaging in the pattern and practice of failing to pay their employees, including Plaintiffs, overtime compensation for all hours worked over forty (40) each workweek.

3.  Plaintiffs allege pursuant to the FLSA, that they are entitled to recover from the Defendants: (1) unpaid overtime wages, (2) liquidated damages, (3) prejudgment and post-judgement interest; and/or (4) attorney's fees and costs.

4.  Plaintiffs further allege pursuant to NYLL § 650 et seq. and 12 New York Codes, Rules and Regulations § 146 (NYCRR) that they are entitled to recover from the Defendants: (1) unpaid overtime compensation, (2) unpaid spread-of-hours premium, (3) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday, (4) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a paystub that accurately and truthfully lists employee's hours along with the employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, and the employee's gross and net wages for each pay day, (5) liquidated damages equal to the sum of unpaid "spread of hours" premium, unpaid overtime in the amount of one hundred percent after April 9, 2011 under NY Wage Theft Prevention Act, (6) 9% simple prejudgment interest provided by NYLL, (7) post-

judgment interest, and (8) attorney's fees and costs.

## JURISDICTION AND VENUE

5.   This Court has original federal question jurisdiction over this controversy under 29 U.S.C.§ 216(b) and 28 U.S.C. § 1331 and has supplemental jurisdiction over the NYLL claims pursuant to 28 U.S.C. § 1367(a).

6.   Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendants conduct business in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

## PLAINTIFFS

7. From on or about August 1, 2017, to on or about May 27, 2024, Plaintiff Alejandro was employed by Defendants to perform work for their construction business. Though Plaintiff Alejandro was explicitly hired as a painter, Defendants would often direct him to perform other work related to construction, such as laying tiles and mixing concrete.

8. From on or about April 1, 2018, to on or about May 27, 2024, Plaintiff Ernesto was employed by Defendants to perform work for their construction business. Though Plaintiff Ernesto was explicitly hired as a painter, Defendants would often direct him to perform other work related to construction, such as laying tiles and mixing concrete.

## DEFENDANTS

### Company Defendant

9. Upon information and belief, Defendant Fuschetto LLC is a domestic limited liability company organized under the laws of the State of New York with a principal address at 302 Chestnut Ave., East Meadow, New York 11554.

10. Upon information and belief, Defendant Fuschetto LLC is a business engaged in interstate commerce that has gross sales in excess of five hundred thousand dollars ($500,000.00) per year.

11. Upon information and belief, Defendant Fuschetto LLC purchased, and handled goods moved in interstate commerce.

### Owner/Operator Defendant

12. Upon information and belief, Defendant Martin is a member and/or managing member or owner of Defendant Fuschetto LLC and being amongst the ten largest shareholders and/or LLC members, is individually responsible for unpaid wages under the New York Business Corporation Law and Limited Liability Company Law. NYBSC § 630(a), NYLLC § 609(c).

13. Upon information and belief, Defendant Martin is an active, day-to-day manager of Defendant Fuschetto LLC and (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records.

14. Defendant Martin acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with

Defendant Fuschetto LLC.

15.    Defendant Martin is an employer of Plaintiffs within the meaning of the FLSA and NYLL.

## STATEMENT OF FACTS

### Wage and Hour Claims

16. There are approximately 12 persons working at the job sites at any one time.

17. Defendants committed the following alleged acts knowingly, intentionally and willfully against the Plaintiffs, the FLSA Collective Plaintiffs, and the Class.

18. At all relevant times, Defendants knowingly and willfully failed to pay Plaintiffs their lawful overtime compensation of one and one-half times (1.5x) their regular rate of pay for all hours worked over forty (40) in a given workweek.

19. Upon information and belief, at all relevant times Defendants improperly withheld portions of Plaintiffs' wages. Defendants routinely and improperly docked Plaintiffs' pay in the event Plaintiffs missed a day of work. For example, if Plaintiffs were scheduled to work 6 days in a week, but only worked 5 days a week, Defendants would only pay Plaintiffs for 4 of the days worked rather than the full 5, as a penalty. Defendants illegally kept these deductions for themselves.

20. Upon information and belief, beginning in or around January 2021, Defendants consistently paid Plaintiffs their wages over one week late.

21. While employed by Defendants, Plaintiffs were not exempt under federal and state laws requiring employers to pay employees overtime.

22. Defendants failed to keep full and accurate records of Plaintiffs' hours and wages.

23. Upon information and belief, Defendants failed to keep full and accurate records in

order to mitigate liability for their wage violations.

24. At all relevant times, Defendants knowingly and willfully failed to provide Plaintiffs and similarly situated employees with Time of Hire Notice reflecting true rates of pay and payday as well as paystubs that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, and the employee's gross and net wages for each pay day.

25. Defendants knew that the nonpayment of overtime pay and New York's "spread of hours" premium for every day in which Plaintiffs worked over ten (10) hours would financially injure Plaintiffs and similarly situated employees and violate state and federal laws.

26. Defendants did not post the required New York State Department of Labor  posters regarding minimum wage pay rates, overtime pay, tip credit, and pay day.

**Plaintiff Alejandro**

27.  From on or about August 1, 2017, through on or about May 20, 2024, Plaintiff Alejandro was employed by Defendants as a painter, but often, would be required to do other construction related work for Defendants.

28.  From on or around August 1, 2017, through on or about April 30, 2018, Plaintiff Alejandro was required by Defendants to meet at a pre-designated yard to report for work (the "Yard") at 7:00am each day, whereupon Defendants or their agents would transport Plaintiff Alejandro to the designated work site. During this period of time, Plaintiff Alejandro would remain at the designated work site until on or about 5pm each day, whereupon Plaintiff Alejandro would be transported back to the Yard, which he would arrive at at approximately 5:30pm each day. Plaintiff Alejandro would not be dismissed from his duties until exiting the Yard.

29.  In other words, during this period of time, Plaintiff Alejandro worked from 7:00am – 5:30pm each day during this period of time, with a 1-hour lunch break on most days, thus working 9.5 hours each day.

30.  Though Plaintiff Alejandro was given a 1-hour lunch break on most days, approximately twice a month during this period, Plaintiff Alejandro was required to utilize his lunch break to perform company related activities. Plaintiff Alejandro was not paid for working these additional hours.

31.  During this period of time Plaintiff Alejandro was expected to work Monday through Saturday (6 days a week), for a total of 57 hours per week.

32.  During this period of time, Plaintiff Alejandro did not receive spread of hours pay for each day where he worked over 10 hours per day, including breaks.

33.  During this period of time, Plaintiff Alejandro was paid in cash approximately $850 dollars per week.

34.  However, on weeks where Plaintiff Alejandro was unable to work Saturdays (which occurred approximately twice per month), Defendants would deduct two days' worth of wages from Plaintiff Alejandro's pay instead of just one. In effect, Defendants improperly withheld 9.5 hours' worth of wages from Plaintiff Alejandro half of the workweeks each year.

35.  In or around April 30, 2018, Defendants provided Plaintiff Alejandro with a van to commute to each work site, and as a result, Plaintiff Alejandro's hours changed. Plaintiff Alejandro was no longer required to report to the Yard and was instead required to report directly to the work sites at 8:00am each day. Plaintiff Alejandro was required to perform work at each job site until 5:00pm each day, after which he was required to pack up and clean the materials used at each job site each day. Accounting for the extra time that he was required to stay at the

end of each day, he was not permitted to leave until approximately 5:15pm each day. Plaintiff Alejandro was required to work 6 days a week, Monday through Saturday.

36.  This schedule remained largely the same from on or about May 1, 2018, through on or about May 20, 2024.

37.  In other words, during this period of time, Plaintiff Alejandro worked from 8:00am – 5:15pm each day during this period of time, with a 1-hour lunch break on most days, thus working 8 hours, 15 minutes each day, 6 days a week, or 49.5 hours per week.

38.  Though Plaintiff Alejandro was given a 1-hour lunch break on most days, approximately twice a month during this period, Plaintiff Alejandro was required to utilize his lunch break to perform company related activities. Plaintiff Alejandro was not paid for working these additional hours.

39.  From approximately May 1, 2018, through approximately December 31, 2019, Plaintiff Alejandro's wage was approximately $900 per week.

40.  However, like before, on any week where Plaintiff Alejandro did not work Saturdays, which occurred approximately twice a month, Plaintiff Alejandro's wage was docked by two days. In effect, Defendants improperly withheld 8.25 hours' worth of wages from Plaintiff Alejandro half of the workweeks each year.

41.  From approximately January 1, 2020, through approximately December 31, 2021, Plaintiff Alejandro's wage was approximately $1,000 per week.

42.  However, like before, on any week where Plaintiff Alejandro did not work Saturdays, which occurred approximately twice a month, Plaintiff Alejandro's wage was docked by two days. In effect, Defendants improperly withheld 8.25 hours' worth of wages from Plaintiff Alejandro half of the workweeks each year

43. From approximately January 1, 2022, through approximately May 14, 2024, Plaintiff Alejandro's wage was approximately $1,100 per week.

44. However, like before, on any week where Plaintiff Alejandro did not work Saturdays, which occurred approximately twice a month, Plaintiff Alejandro's wage was docked by two days. In effect, Defendants improperly withheld 8.25 hours' worth of wages from Plaintiff Alejandro half of the workweeks each year

45. At all relevant times, despite the fact that each week, Plaintiff Alejandro worked in excess of 40 hours, Plaintiff Alejandro was never paid any overtime premium whatsoever.

46. Further, beginning in or around January 1, 2021, Defendants no longer paid Plaintiff Alejandro on a weekly basis. Instead, beginning around that time, Defendants would provide Plaintiff Alejandro with a check to cash at the start of each month.

47. Often times, the check provided to Plaintiff Alejandro was not even issued by Defendants, but rather, would be issued by Defendants' customers.

48. Defendants directed Plaintiff Alejandro to deposit these checks, and informed Plaintiff Alejandro that these checks represented a one-month advance of wages for Plaintiff Alejandro and Plaintiff Ernesto.

49. However, the amounts advanced were never enough to fully satisfy Plaintiff Alejandro and Plaintiff Ernesto's wages, and the advanced funds would usually only last two weeks.

50. This resulted in at least 2-week period each month where both Plaintiff Alejandro and Plaintiff Ernesto were working without being timely paid.

51. At the end of each month, Defendants would have to provide Plaintiff Alejandro with additional checks to cover payments for Plaintiff Alejandro and Plaintiff Ernesto that the initial

monthly check did not cover.

52.  Further, throughout his employment, Plaintiff Alejandro was not given a statement with each payment of wages reflecting employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, and the employee's gross and net wages for each pay day in Spanish, Plaintiff Alejandro's native language.

53.  As set forth above, throughout his employment, Defendants would regularly fail to promptly pay Plaintiff Alejandro any wages owed.

**Plaintiff Ernesto**

54. From on or about May 1, 2018, through on or about May 20, 2024, Plaintiff Ernesto was employed by Defendants as a painter, but often, would be required to do other construction related work for Defendants.

55. At all relevant times, Plaintiff Ernesto was required to report directly to the work sites at 8:00am each day. Plaintiff Ernesto was required to perform work at each job site until 5:00pm each day, after which he was required to pack up and clean the materials used at each job site each day. Accounting for the extra time that he was required to stay at the end of each day, he was not permitted to leave until approximately 5:15pm each day. Plaintiff Ernesto was required to work 6 days a week, Monday through Saturday.

56. In other words, during the entirety of his employment, Plaintiff Ernesto worked from 8:00am – 5:15pm each day, with a 1-hour lunch break on most days, thus working 8 hours, 15 minutes each day.

57. Though Plaintiff Ernesto was given a 1-hour lunch break on most days, approximately

twice a month during this period, Plaintiff Ernesto was required to utilize his lunch break to perform company related activities. Plaintiff Ernesto was not paid for working these additional hours.

58. From approximately May 1, 2018, through approximately December 31, 2019, Plaintiff Ernesto's wage was approximately $800 per week.

59. However, on any week where Plaintiff Ernesto did not work Saturdays, which occurred approximately twice a month, Plaintiff Ernesto's wage was docked by two days. In effect, Defendants improperly withheld 8.25 hours' worth of wages from Plaintiff Alejandro half of the workweeks each year.

60. From approximately January 1, 2020, through approximately December 31, 2021, Plaintiff Ernesto's wage was approximately $850 per week.

61. However, like before, on any week where Plaintiff Ernesto did not work Saturdays, which occurred approximately twice a month, Plaintiff Ernesto's wage was docked by two days. In effect, Defendants improperly withheld 8.25 hours' worth of wages from Plaintiff Alejandro half of the workweeks each year

62. From approximately January 1, 2022, through approximately May 14, 2024, Plaintiff Ernesto's wage was approximately $900 per week.

63. However, like before, on any week where Plaintiff Ernesto did not work Saturdays, which occurred approximately twice a month, Plaintiff Ernesto's wage was docked by two days. In effect, Defendants improperly withheld 8.25 hours' worth of wages from Plaintiff Alejandro half of the workweeks each year

64. At all relevant times, despite the fact that each week, Plaintiff Ernesto worked in excess of 40 hours, Plaintiff Ernesto was never paid any overtime premium whatsoever.

65. Further, beginning in or around January 1, 2021, Defendants no longer paid Plaintiff Ernesto on a weekly basis. Instead, beginning around that time, Defendants would provide Plaintiff *Alejandro* with a check to cash at the start of each month, with the intention that the cover the wages for both Plaintiff Alejandro *and* Plaintiff Ernesto.

66. Often times, the check provided to Plaintiff Alejandro was not even issued by Defendants, but rather, would be issued by Defendants' customers.

67. Defendants directed Plaintiff Alejandro to deposit these checks, and informed Plaintiff Alejandro that these checks represented advance month payments for Plaintiff Alejandro *and* Plaintiff Ernesto's wages.

68. However, the amounts advanced were never enough to fully satisfy Plaintiff Alejandro and Plaintiff Ernesto's wages, and the advanced funds would usually only last two weeks.

69. This resulted in at least 2-week period each month where both Plaintiff Alejandro and Plaintiff Ernesto were working without being timely paid.

70. At the end of each month, Defendants would have to provide Plaintiff Alejandro with additional checks to cover payments for Plaintiff Alejandro and Plaintiff Ernesto.

71. Further, throughout his employment, Plaintiff Ernesto was not given a statement with each payment of wages reflecting employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, and the employee's gross and net wages for each pay day in Spanish, Plaintiff Ernesto's native language.

72. As set forth above, throughout his employment, Defendants would regularly fail to promptly pay Plaintiff Ernesto any wages owed.

## COLLECTIVE ACTION ALLEGATIONS

73. Plaintiffs bring this action individually and as class representatives on behalf of all other and former non-exempt employees who have been or were employed by Defendants for up to the last three (3) years and 228 days, through entry of judgment in this case (the "Collective Action Period") and who were not compensated at one and one half times their promised work for all hours worked in excess of forty (40) hours per week (the "Collective Action Members")[1].

## CLASS ACTION ALLEGATIONS

74. Plaintiffs bring their NYLL claims pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") Rule 23, on behalf of all non-exempt personnel employed by Defendants on or after the date that is six years and 228 days before the filing of the Complaint in this case as defined herein (the "Class Period")[2].

75. All said persons, including Plaintiffs, are referred to herein as the "Class."

76. The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rate of pay for each Class Member is also determinable from Defendants' records. For purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under said Fed. R. Civ. P. 23.

---

[1] The additional 228 days represents the tolling of the statute of limitations as a result of the executive orders issued in 2020 as a response to the COVID-19 pandemic
[2] The additional 228 days represents the tolling of the statute of limitations as a result of the executive orders issued in 2020 as a response to the COVID-19 pandemic.

**Numerosity**

77. The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of the number is presently within the sole control of the Defendants, upon information and belief, there are more than forty (40) members of the class.

**Commonality**

78. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a. Whether Defendants employed Plaintiffs and the Class within the meaning of the New York law;

b. Whether Plaintiffs and Class members are promised and not paid at their promised hourly wage;

c. Whether Plaintiffs and Class members are entitled to and paid overtime at their promised hourly wage under the New York Labor Law;

d. Whether Defendants maintained a policy, pattern and/or practice of failing to pay Plaintiffs and the Rule 23 Class spread-of-hours pay as required by the NYLL;

e. Whether Defendants maintained a policy, pattern and/or practice of failing to provide requisite statutory meal periods;

f. Whether Defendants provided a Time of Hire Notice detailing rates

of pay and payday at the start of Plaintiffs and the Rule 23 Class's start of employment and/or timely thereafter;

g.　　　　Whether Defendants provided paystubs detailing the rates of pay and credits taken towards the minimum wage to Plaintiffs and the Rule 23 class on each payday; and

h.　　　　At what common rate, or rates subject to common method of calculation was and is Defendants required to pay the Class members for their work.

**Typicality**

79. Plaintiffs' claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same company practices of Defendants, as alleged herein, of failing to pay overtime compensation. Defendants' company-wide policies and practices affected all Class members similarly, and Defendants benefitted from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

**Adequacy**

80. Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in representing plaintiffs in both class action and wage-and-hour

employment litigation cases.

## **Superiority**

81. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage-and-hour litigation where individual Class members lack the financial resources to vigorously prosecute a lawsuit against company Defendant. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of efforts and expenses that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. Further, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

82. Upon information and belief, Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

## STATEMENT OF CLAIMS

### COUNT I.

### [Violations of the Fair Labor Standards Act—Failure to Pay Overtime Brought on behalf of the Plaintiffs and the FLSA Collective]

83. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

84. The FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee receives compensation for employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which he is employed, or one and one-half times the minimum wage, whichever is greater. 29 U.S.C. § 207(a).

85. The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 207 shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages. 29 USC § 216(b).

86. Defendants' failure to pay Plaintiffs and the FLSA Collective their overtime pay

violated the FLSA.

87. At all relevant times, Defendants had, and continues to have, a policy of practice of refusing to pay overtime compensation at the statutory rate of time and a half to Plaintiffs and Collective Action Members for all hours worked in excess of forty (40) hours per workweek, which violated and continues to violate the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

88. The FLSA and supporting regulations require employers to notify employees of employment law requirements. 29 C.F.R. § 516.4.

89. Defendants willfully failed to notify Plaintiffs and FLSA Collective of the requirements of the employment laws in order to facilitate its exploitation of Plaintiffs' and FLSA Collectives' labor.

90. Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by its failure to compensate Plaintiffs and Collective Class Members the statutory overtime rate of time and one half for all hours worked in excess of forty (40) per week when they knew or should have known such was due and that failing to do so would financially injure Plaintiffs and Collective Action members.

## COUNT II.

**[Violations of New York Labor Law—Failure to Pay Overtime Brought on behalf of Plaintiffs and Rule 23 Class]**

91. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

92. An employer who fails to pay overtime shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to one hundred percent (100%) under NY

Wage Theft Prevention Act, and interest.

93. At all relevant times, Defendants had a policy and practice of refusing to pay overtime compensation to Plaintiffs at one and one-half times the hourly rate Plaintiffs and the class are entitled to.

94. Defendants' failure to pay Plaintiffs their overtime pay violated the NYLL.

95. Defendants' failure to pay Plaintiffs was not in good faith.

## COUNT III.

### [Violation of New York Labor Law—Spread of Time Pay Brought on behalf of Plaintiffs and Rule 23 Class]

96. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

97. The NYLL requires employers to pay an extra hour's pay for every day that an employee works an interval in excess of ten hours pursuant to NYLL §§ 190, *et seq.*, and §§ 650, *et seq.*, and New York State Department of Labor regulations § 146-1.6.

98. Defendants' failure to pay Plaintiffs' spread-of-hours pay was not in good faith.

## COUNT IV.

### [Violation of New York Labor Law—Failure to Keep Records Brought on behalf of Plaintiffs and Rule 23 Class]

99. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

100.     Defendants did not maintain, establish and preserve Plaintiffs' weekly payroll records for a period of not less than six years, as required by NYCRR § 146-2.1.

101.    As a result of Defendants' unlawful conduct, Plaintiffs have sustained damages including loss of earning, in an amount to be established at trial, liquidated damages, prejudgment interest, costs and attorneys' fee, pursuant to the state law.

102.    Upon information and belief, Defendants failed to maintain adequate and accurate written records of actual hours worked and true wages earned by Plaintiffs in order to facilitate their exploitation of Plaintiffs' labor.

103.    Defendants' failure to maintain adequate and accurate written records of actual hours worked and true wages earned by Plaintiffs was not in good faith.

### COUNT V.

### [Violation of New York Labor Law—Failure to Provide Time of Hire Wage Notice Brought on behalf of Plaintiffs and Rule 23 Class]

104.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

105.    The NYLL and supporting regulations require employers to provide written notice of the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as a part of minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer. NYLL §195-1(a).

106.    Defendants intentionally failed to provide notice to employees in violation of New York Labor Law § 195, which requires all employers to provide written notice in the

employee's primary language about the terms and conditions of employment related to rate of pay, regular pay cycle and rate of overtime on their or her first day of employment.

107.    Defendants not only did not provide notice to each employee at Time of Hire but failed to provide notice to Plaintiffs even after the fact.

108.    Due to Defendants' violations of New York Labor Law, Plaintiffs are entitled to recover from Defendants, jointly and severally, $50 for each workday that the violation occurred or continued to occur, up to $5,000, together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-b).

## COUNT VI.

### [Violations of the Fair Labor Standards Act—Failure to make Prompt Payment on behalf of Plaintiffs and the FLSA Collective]

109.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

110.    The FLSA provides that "every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce... wages at the following rates…" U.S.C. § 206(a).

111.    The FLSA implicitly requires that wages be promptly paid when due.

112.    Defendants' failure to promptly pay Plaintiffs and the FLSA Collective their wages violated the FLSA.

113.    Defendants had, and continues to have, a policy of practice of refusing to promptly pay Plaintiffs and Collective Action Members for all hours worked, and of issuing checks to Plaintiffs that would not adequately cover Plaintiff's wages for the month. Plaintiffs would

frequently go over two weeks without being paid.

114.    Due to Defendants' violations of the FLSA, Plaintiffs are entitled to recover from Defendant liquidated damages equal to 100% of their wages for each pay period in which Defendant failed to promptly pay Plaintiffs their wages pursuant to the FLSA, together with costs and attorneys' fees.

## COUNT VII.

**[Violation of New York Labor Law—Failure to Pay Workers in Accordance with the Terms of Employment Brought on behalf of Plaintiffs and Rule 23 Class]**

115.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

116.    The NYLL and supporting regulations require that "A manual worker **shall** be paid weekly and not later than seven calendar days after the end of the week in which wages are earned". NYLL §191(1)(a)(i).

117.    Defendants had, and continues to have, a policy of practice of refusing to pay Plaintiffs and Rule 23 Class Members less than semi-monthly. Defendants would instead pay Plaintiffs monthly in an amount insufficient to cover Plaintiffs monthly wages.

118.    Due to Defendants' violations of the NYLL, Plaintiffs are entitled to recover from Defendant liquidated damages equal to 100% of their wages for each pay period in which Defendant failed to comply with the NYLL, together with costs and attorneys' fees.

## COUNT VIII.

**[Violation of New York Labor Law—Failure to Provide Wage Statements**

**Brought on behalf of Plaintiffs and Rule 23 Class]**

119.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

120.    The NYLL and supporting regulations require employers to provide detailed paystub information to employees every payday. NYLL § 195-1(d).

121.    Defendants have failed to make a good faith effort to comply with the New York Labor Law with respect to compensation of each Plaintiff and did not provide the paystub on or after each Plaintiffs' payday.

122.    Due to Defendants' violations of New York Labor Law, Plaintiffs are entitled to recover from Defendants, jointly and severally, $250 for each workday of the violation, up to $5,000 for each Plaintiff together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-d).

## COUNT IX.

**[Violation of New York Labor Law—Illegal Deductions from Wages**

**Brought on behalf of Plaintiffs and Rule 23 Class]**

123.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

124.    The NYLL and supporting prohibit employers from making any deductions in an employee's wage except those expressly permitted by the Labor Law. NYLL § 193.

125.    Defendants have improperly withheld portions of Plaintiffs' wages, by improperly docking Plaintiffs pay if Plaintiffs ever missed a day of work.in violation of NYLL §

193.

126.    Due to Defendants' violations of New York Labor Law, Plaintiffs are entitled to recover from Defendants, jointly and severally, liquidated damages together with costs and attorneys' fees.

## TOLLING OF THE STATUTE OF LIMITATIONS

127.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

128.    Upon information and belief, Defendants knew that Plaintiffs and members of the FLSA Class/Collective were entitled to proper overtime compensation, and knowingly and maliciously violated the FLSA and NYLL.

129.    Upon information and belief, Defendants concealed from Plaintiffs and members of the FLSA Class/Collective their rights to receive minimum wages and overtime compensation.

130.    Upon information and belief, Defendants failed to provide Plaintiffs and members of the FLSA Class/Collective with notice of their rights to receive minimum wages and overtime compensation.

131.    Because Defendants, upon information and belief, have concealed from Plaintiffs and members of the FLSA Class/Collective notice of their rights to receive minimum wages and overtime compensation as required by FLSA, discussed supra, the claims of Plaintiffs and the FLSA Collective for unpaid overtime compensation, statutory damages, and other relief, may extend beyond the statute of limitations for violations of the FLSA and NYLL on the grounds of equitable tolling.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury on all issues of fact and damages stated herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves, and on the behalf of the FLSA Collective and Rule 23 Class, respectfully request that this Court enter a judgment providing the following relief:

a)     An Order tolling the statute of limitations;

b)     An Order certifying a Rule 23 Class;

c)     Authorizing Plaintiffs at the earliest possible time to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of issuance of court-supervised notice, been employed by Defendants as non-exempt employees. Such notice shall inform them that the civil notice has been filed, of the nature of the action, of their right to join this lawsuit if they believe they were denied premium overtime wages;

d)     Certification of this case as a collective action pursuant to FLSA;

e)     Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiffs and their counsel to represent the Collective Action Members;

f)     A declaratory judgment that the practices complained of herein are unlawful under

FLSA and New York Labor Law;

g)    An injunction against company Defendant, its officers, agents, successors, employees, representatives and any and all persons acting in concert with it as provided by law, from engaging in each of unlawful practices and policies set forth herein;

h)    An award of unpaid overtime wages due under FLSA and New York Labor Law due Plaintiffs and the Collective Action members plus compensatory and liquidated damages in the amount of one hundred percent (100%) under NY Wage Theft Prevention Act;

i)    An award of liquidated and/or punitive damages as a result of Defendants' knowing and willful failure to pay overtime compensation pursuant to 29 U.S.C. §216;

j)    Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday;

k)    Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a paystub that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day;

l)    An award of liquidated and/or punitive damages as a result of Defendants' willful failure to overtime compensation, and "spread of hours" premium pursuant to New York Labor Law;

m)    An award of liquidated damages as a result of Defendants' failure to promptly pay Plaintiffs' wages pursuant to the FLSA;

n)    An award of liquidated damages as a result of Defendants' failure to pay Plaintiffs' wages in accordance with the agreed terms of employment pursuant to New York Labor Law;

o)      An award of costs and expenses of this action together with reasonable attorneys' and expert fees pursuant to 29 U.S.C. §216(b) and NYLL §§198 and 663;

p)      The cost and disbursements of this action;

q)      An award of prejudgment and post-judgment fees;

r)      Providing that if any amounts remain unpaid upon the expiration of ninety days following the issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL §198(4); and

s)      Such other and further legal and equitable relief as this Court deems necessary, just, and proper.


Dated: August 9, 2024                    **Xue & Associates, P.C.**
       Glen Cove, New York               *Attorneys for the Plaintiffs, proposed FLSA*
                                         *Collective and potential Rule 23 Class*


                              By:    /s/ BENJAMIN B. XUE
                                     Benjamin B. Xue, Esq.
                                     Michael S. Romero, Esq.
                                     1 School Street, Suite 303A
                                     Glen Cove, NY 11542
                                     Tel.: (516) 595-8887
                                     benjaminxue@xuelaw.com
                                     mromero@xuelaw.com