**XUE & ASSOCIATES, P.C.**
1 SCHOOL STREET, SUITE 303A
GLEN COVE, NY 11542
PHONE: (516) 595-8887
FACSIMILE: (212) 219-2276

BENJAMIN B. XUE  
MEMBER OF NY & NJ BARS

MICHAEL S. ROMERO  
MEMBER OF NY BAR

September 19, 2025

**Via ECF**
Hon. Steven L. Tiscione, U.S.M.J.
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, NY 11722

    Re:    **Jerez et al v. Fuschetto Home Improvements, LLC et al**
                  **Docket No.: 2:24-cv-05587**

Dear Hon. Judge Tiscione:

This office represents Plaintiffs Guillermo Alejandro Jerez ("Alejandro") and Guillermo Ernesto Jerez ("Ernesto") (collectively "Plaintiffs') in the above captioned action. We write to you jointly with counsel for Defendants Fuschetto Home Improvements LLC ("Fuschetto LLC") and Gerardo Martin Fuschetto ("Martin")(collectively "Defendants") to respectfully request the Court's approval of the parties' negotiated Settlement Agreement and Release (the "Settlement Agreement") herein attached as **Exhibit A.** For the reasons set forth below, the Parties respectfully request that the Settlement Agreement be approved pursuant to the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc*., 796 F.3d 199 (2d Cir. 2015) and be found to be fair and reasonable in accordance with the factors set forth in *Wolinsky v. Scholastic Inc*., 900 F. Supp. 2d 332, 335-336 (S.D.N.Y. 2012).

1

I. **<u>Plaintiffs' Allegations and Defendants' Responses</u>**

Plaintiffs brought this action under the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA"), and the New York Labor Law ("NYLL"), claiming unpaid wages and overtime wages, "spread of hours" pay, damages for wage notice and wage statements violations, and damages for a failure to timely pay wages.

Plaintiffs consist of a father and son and are former employees who worked for Defendants. The son, Plaintiff Alejandro was employed by Defendants from approximately August 1, 2017, to approximately May 27, 2024. The father, Plaintiff Ernesto, was employed by Defendants from approximately April 1, 2018, through approximately May 27, 2024. Though both Plaintiffs were explicitly hired as painters, Defendants would often direct them to perform other work related to construction, such as laying tiles and mixing concrete. Plaintiffs' exact work hours and wages would change throughout their employment.

Plaintiffs allege that at all relevant times, Plaintiffs worked in excess of 40 hours per week, and at all relevant times, Plaintiffs were not paid the proper overtime wage of 1.5x their regular wage. Further, Plaintiffs allege that, at all relevant times, they did not receive spread of hours pay for each day where they worked over 10 hours per day, including breaks.

Plaintiffs allege that rather than being paid on a weekly basis and rather than being paid an amount rooted in the reality of Plaintiffs' working hours, Defendants would instead provide Plaintiffs with checks in arbitrary amounts to credit toward both of Plaintiffs' wages. Plaintiffs allege that, although these payments ostensibly represented "credits" toward Plaintiffs earned wages, however, often times, these checks were insufficient to cover the wages owed to Plaintiffs,

2

resulting in Plaintiffs going weeks at a time without being paid for their work, in violation of Section 216(a) of the FLSA and NYLL §191-1(d), which require prompt payment of wages.

DEFENDANTS POSITION

Defendants deny the allegations asserted by Plaintiffs and specifically deny any potential liability. Defendants contend that Plaintiffs grossly exaggerated their overtime hours worked, and that many of Plaintiffs' claims are simply not viable factually or legally. Specifically, the spread-of-hours claim is not viable as Plaintiffs earned more than minimum wage; the pay frequency violation is not viable in light of *Grant v. Global Aircraft Dispatch, Inc.*, 223 A.D.3d 712, 714-720 (2d Dep't 2024); and Defendants' claim of wages for travel time must fail since Plaintiff Alejandro was not *required* to come to the yard in advance of the workday.

In sum, there is a bona fide dispute between the Parties regarding the merits of Plaintiffs' claims. The instant settlement constitutes the Parties' effort to resolve same in an amicable fashion through arm's length bargaining.

## II. Settlement Amount and Apportionment

Early on in this matter, the parties were open to exploring settlement in this matter and agreed to perform discovery in anticipation of a mediation. During this limited phase 1 discovery, Defendants produced certain, incomplete pay records for Plaintiffs. Despite the fact that it was Defendants' responsibility to maintain such records, Plaintiffs also maintained certain handwritten records.

The parties conferred concerning these records and Defendants raised certain issues with them, claiming that they indicated that Plaintiff's allegations concerning their hours worked was not accurate.

On or about May 19, 2025, the initial mediation session was held. Plaintiff Alejandro and his counsel appeared on behalf of Plaintiffs, and Defendant Martin and his counsel appeared on behalf of Defendants. The initial mediation session lasted approximately half a day. Though the parties were unable to resolution at that time, they were able to make significant progress toward reaching one. The parties agreed to adjourn the mediation to another day, so that the parties could exchange other limited discovery.

The parties exchanged the supplemental discovery, and on or about July 30, 2025, the second mediation session was held. Once again, Plaintiff Alejandro and his counsel appeared on behalf of Plaintiffs, and Defendant Martin and his counsel appeared on behalf of Defendant. The second mediation was successful, and the parties were able to agree on a settlement amount of $145,000.

The settlement amount of $145,000 is broken down as follows: after deducting costs incidental to the litigation ($201) in service costs (see **Exhibit B**), $405 in filing fees with the Court (see **Exhibit C**), and $800 mediation cost (see **Exhibit D**), for a total of $1,406) 2/3 of the settlement amount ($95,729.33) is to be paid to the Plaintiffs, and 1/3 of the settlement amount ($47,864.67) is to be paid to Plaintiffs' counsel as attorneys' fees. The breakdown of the payments to Plaintiffs is as follows: a) $54,565.72 to Plaintiff Alejandro and $41,163.61 to Plaintiff Ernesto. Annexed hereto as **Exhibit E** is a chart indicating the apportionment percentage paid to each Plaintiff, the total amount paid to each Plaintiff and the payment schedule.

The apportionment percentages are based upon the allegations concerning the length of time that each Plaintiff alleges they worked for Defendant. While there is a dispute as to the exact number of hours that each Plaintiff worked, it is undisputed that Plaintiff Alejandro worked for approximately one year longer than Plaintiff Ernesto did.

### III. The Settlement Agreement is Fair and Reasonable

Plaintiffs seek final approval of the Settlement Agreement reached in this case, pursuant to the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015) (holding that, "the FLSA falls within the 'applicable federal statute' exception under Rule 41" and therefore, "Rule 41(a)(1)(A)(ii) stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the DOL to take effect."). As set forth in further detail below, and in accordance with *Wolinksy v. Scholastic Inc.*, 900 F. Supp. 2d 332 (S.D.N.Y. 2012), the Parties are in agreement that this settlement is fair, reasonable, consistent with the underlying purposes of the FLSA, and is the product of equal bargaining.

As articulated in *Wolinksy*, when assessing the fairness of a settlement, a court should consider the totality of circumstances including but not limited to several factors such as: (1) the range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement "is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion. *Wolinksy*, 900 F. Supp. 2d at 335 (quoting *Medley v. Am. Cancer Soc.*, No. 10 Civ. 3214, 2010 U.S. Dist. LEXIS 75098 (S.D.N.Y. July 23, 2010)). Based on an analysis of these

5

factors, the Parties are confident that the negotiation process was conducted at arm's length and should pass this Court's scrutiny.

### A. The Range of Possible Recovery and the Litigation Risks Faced by the Parties

The range of possible recovery in this action varies wildly based upon whose assertions are accepted as true by a finder of fact. Based on damage calculations prepared by Plaintiffs' counsel relying solely on Plaintiffs' allegations, Plaintiffs claimed that they are owed **$63,123.72** in overtime wages exclusive of statutory penalties, liquidated damages, and attorney's fees. Liquidated damages on the overtime wages would amount to an additional **$63,123.72**, for a total owed on the liquidated damages claim of **$126,247.44**, not including attorney's fees. Annexed hereto as **Exhibit F** is a chart of damages owed to Plaintiffs based upon Plaintiffs' allegations. These calculations, however, do not factor the inherent risks and uncertainties of proceeding with a trial. *See e.g. Meigel v. Flowers of the World, NYC, Inc.,* 2012 U.S. Dist. LEXIS 2359, at *2-3, 11 Civ. 465 (KBF) (S.D.N.Y. Jan. 9, 2012) ("Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement.")

Through the course of pre-mediation discovery, Plaintiffs produced their contemporaneous pay journals concerning their hours, along with text message communications. While Plaintiffs maintain that these documents *generally* coincide with Plaintiffs allegations (which Defendants deny), they do show that Plaintiffs' allegations *aren't* exact, and thus, Defendants assert that Plaintiffs' damage calculations, which are only an estimate, are exaggerated.

Although Plaintiffs alleged additional damages owed to Plaintiffs are liquidated damages for late payments, these are not included in the damages chart, due to the significant uncertainties as to whether Plaintiffs are entitled to said damages, due to developing case law and legislation. These uncertainties have been factored into the settlement payment amount.

The FLSA Section 206(a) and NYLL §191-1(d) require prompt payment of wages, and provide for damages in the event wages are not timely paid. Historically, the damages awarded for such untimely payments were liquidated damages in an amount equal to the late payments. *See* e.g. *Belizaire v. Rav Investigative and Sec Services Ltd*. 61 F. Supp.3d 336 (2nd Cir. 2014). However, evolving case law and legislation may soon change this.

Last year, the New York Appellate Division, Second Department, held in *Grant v Global Aircraft Dispatch, Inc.*, 223 AD3d 712 (2d Dept 2024), that NYLL §191-1(d) "does not expressly provide for a private right of action to recover liquidated damages, prejudgment interest, and attorneys' fees where a manual worker is paid all of his or her wages biweekly, rather than weekly". *Grant v Global Aircraft Dispatch, Inc.*, 223 AD3d 712, 719 (2d Dept 2024). Although several district courts in the 2nd Circuit have rejected *Grant* (See, e.g. *Cooke v Frank Brunckhorst Co., LLC*, 734 F Supp 3d 206, 217 (EDNY 2024); *Schiller-Egles v PromptCare Cos., Inc.*, 2025 US Dist LEXIS 57829 (SDNY Mar. 25, 2025, No. 23-CV-6790 (KMK)), these decisions are not binding, as the Second Circuit Court of Appeals has not yet ruled on this matter.

More recently, on or about May 9, 2025, NYLL § 198(1-a) was amended so that liquidated damages would not be available for violations of NYLL §191-1(d) "where the employer paid the employee wages on a regular payday, no less frequently than semi-monthly").

While Plaintiffs maintain that (i) the amendment to NYLL § 198(1-a) is not applicable, as Plaintiffs were not paid on a regular payday, and were often paid less frequently than semi-

7

monthly, (ii) the *Grant* decision is not binding and that the trend among courts in this circuit is to reject it, and (iii) in any event, damages would still be available under the FLSA, Plaintiffs acknowledge that there is significant risk that they may not be awarded any of these damages at all.

In light of the foregoing, the parties believe the settlement amount of $145,000.00 is fair and reasonable, as the parties avoid the burden and risk of establishing their respective claims and defenses at trial. Further, Plaintiffs will be able to receive the settlement funds within 90 days after approval of the settlement agreement, much faster than if this case were to be litigated to trial.

Most importantly, Plaintiffs understand the situation, are satisfied with the settlement amount, and voluntarily and willingly entered into the Settlement Agreement.

### B. The Settlement Negotiations Occurred at Arm's Length

Arm's length bargaining between represented parties weighs in favor of finding a settlement reasonable. *See, e.g.*, *Lliguichuzhca*, 948 F. Supp. 2d at 366; *Zeltser*, 2014 U.S. Dist. LEXIS 135635, at *17 (finding an FLSA settlement reasonable where, as here, it was the result of arm's-length negotiations and "Plaintiffs and Defendants were represented by counsel experienced in wage and hour law."). Here, counsel for both parties are experienced litigators. The undersigned practices primarily on employment law issues. The settlement was reached after a year-long litigation. The terms of the settlement agreement were reached and agreed upon during two mediation sessions where the parties were present.

Moreover, prior to entering into the settlement agreement, Plaintiffs had thoroughly considered the risks and benefits of continuing the litigation. The Settlement Agreement reflects the conclusion on the part of experienced counsel for all parties that the terms were a fair and reasonable assessment of their respective risks. The settlement was reached over two mediation sessions that was presided by Joseph DiBenedetto, an experienced litigation attorney and mediator who previously was a partner at Winston & Strawn.

### C. Attorney's Fees

The settlement agreement also provides for reasonable attorneys' fees. Pursuant to our firm's agreement with the Plaintiffs dated June 2024, the Firm will retain 1/3 of the Settlement Amount as attorneys' fees. Based on previous experience in handling FLSA and NYLL matters, this is a standard and acceptable arrangement for attorneys' fees.

Attorneys' fees of 33% on FLSA and NYLL claims are routinely approved by courts in the Second Circuit. *See, e.g., Calle v. Elite Specialty Coatings Plus, Inc.*, 2014 U.S. Dist. LEXIS 164069 (E.D.N.Y. Nov. 19, 2014) (approving settlement of FLSA and NYLL claims stating that a "one-third contingency fee is a commonly accepted fee in this Circuit"); *Rangel v. 639 Grand St. Meat & Produce Corp.*, 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013). This case is distinguishable from the case cited in *Cheeks*, wherein that settlement agreement was denied because the attorneys' fees were set at between 40 and 43.6 percent of the total payment, without justification to support the higher fees. *Cheeks v. Freeport Pancake House, Inc.*, 796 F3d 199, 206 (2d Cir 2015) (citing *Lopez v Nights of Cabiria, LLC*, 96 F Supp 3d 170, 181-82 (SDNY 2015). Therefore, as one-third is standard practice in FLSA claims, it is a fair number for this matter as well.

While the Second Circuit's ruling in *Cheeks* did not outline the factors for approving a settlement, certain red-flag issues were identified, such as the inclusion of confidentiality provisions, general releases, and attorneys' contingency fees in excess of 40%. *Id*. at 206. This Agreement contains no such red flags. Moreover, since the *Cheeks* decision, many courts have recognized the "percentage of the fund" method as an appropriate means by which to compensate plaintiff's attorneys in FLSA settlements. *See Velasquez v. Digital Page*, No. 11 Civ. 3892, 2016 U.S. Dist. LEXIS 84554, at *4 (E.D.N.Y. June 28, 2016) (applying one-third of percentage of fund method in approving settlement); *see also Hiang v. Chiang*, No. 16 Civ. 1129, 2016 U.S. Dist. LEXIS 142670, at *7-8 (S.D.N.Y. Oct. 14, 2016) (awarding attorneys' fees of one-third of settlement amount in FLSA case); *Chauca v. Abitino 's Pizza 49th St. Corp.*, No. 15 Civ. 6278, 2016 U.S. Dist. LEXIS 86206, at *6 (S.D.N.Y. June 29, 2016) (awarding attorneys' fees in amount of one third of gross settlement); *Meza v. 317 Amsterdam Corp.*, No. 14 Civ. 9007, 2015 WL 9161791, at *2 (S.D.N.Y. Dec. 14, 2015) (when using the "percentage of the fund" approach, "courts regularly approve attorneys' fees of one-third of the settlement amount in FLSA cases"); *Rangel v. 639 Grand St. Meat & Produce Corp.*, No. 13 Civ. 3234, 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013) (approving attorneys' fees of one third of the FLSA settlement amount); *Febus v. Guardian First Funding Group, LLC*, 870 F. Supp. 2d 337, 340-41 (S.D.N.Y. 2012) ("a fee that is one-third of the fund is typical" in FLSA cases).

Therefore, the attorney's fees requested is reasonable under the circumstances. *Cf. Scott v. BK Beasts LLC*, No. 17-CV-699 (RRM) (PK), 2018 U.S. Dist. LEXIS 75928, at *5 (E.D.N.Y. May 3, 2018) (holding attorney's fees request totaling 38% of the settlement fund reasonable because the attorney's fees requested "fall below the lodestar amount"). Here, Xue & Associates, P.C. has been involved in this matter for over a year, and work has included, without limitation, multiple

10

client meetings, drafting the pleadings, reviewing and exchanging paper discovery (which included, but was not limited to, hundreds of pages of pay records and thousands of text messages provided by Plaintiff) preparing mediation documents, and participating in two mediation sessions.

### IV. Conclusion

For the foregoing reasons, counsel for all Parties respectfully submit that the Settlement Agreement is fair and reasonable, and therefore jointly request that the Court approve or so order the Settlement Agreement and enter the Stipulation and Order of Final Dismissal with Prejudice appended thereto.

Respectfully submitted,

*/s/ Benjamin B. Xue*
Benjamin B. Xue

cc: Defense Counsel (by ECF)